**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| JUANA DOLMO, | ) | NO. CV 04-07558(Mc) |
| Plaintiff, | ) ) | |
| v. | ) ) | MEMORANDUM OF DECISION AND ORDER IN A SOCIAL SECURITY CASE |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | ) ) ) ) | |
| Defendant. | ) ) | |

The plaintiff, JUANA DOLMO, filed the present action for review of a final determination of the Commissioner of Social Security (the "Commissioner") that the plaintiff is not disabled and not entitled to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") disability benefits. For the reasons set forth below, the court finds that the decision of the Commissioner is not supported by substantial evidence. The matter is, therefore, remanded for further proceedings.

**BACKGROUND**

The plaintiff filed applications for DIB and SSI disability benefits under the Social Security Act (the "Act") on March 3, 2003. [Administrative Record ("AR") 32-34, 112-14.] The Commissioner denied

the applications [AR 26-30, 115-19], and, at the plaintiff's request, an administrative hearing was held before Administrative Law Judge Stanley Hogg (the "ALJ") on November 21, 2003. [AR 125-45.] On April 20, 2004, the ALJ filed a decision concluding that the plaintiff was not under a disability as defined in the Act at any time through the date of the decision. [AR 13-20.] The Appeals Council denied the plaintiff's request for review of the ALJ's decision. [AR 4-7.] The decision of the ALJ stands as the final decision of the Commissioner.

Thereafter, the plaintiff filed the present action. The plaintiff and the Commissioner have consented to proceed before a United States Magistrate Judge. The parties have entered into a Joint Stipulation setting forth their arguments.

## **STANDARDS OF REVIEW**

The court must sustain the findings of the Commissioner unless: (a) they are not supported by substantial evidence in the record as a whole; or (b) the Commissioner applied an improper legal standard. See 42 U.S.C. 405(g); Gordon v. Secretary of Health and Human Services, 803 F.2d 1071, 1072 (9th Cir. 1986). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988). "Substantial evidence" is evidence a "reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. at 402; Gordon v. Secretary of Health and Human Services, 803 F.2d at 1072.

This court must review the record as a whole and consider adverse as well as supporting evidence. See Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than

one rational interpretation, the court must sustain the Commissioner's decision.  See Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984).

## **THE FIVE-STEP SEQUENTIAL EVALUATION**

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled.  First, the Commissioner determines whether the person is engaged in "substantial gainful activity."  If so, the Commissioner denies disability benefits.  Second, if the person is not so engaged, the Commissioner determines whether the person has a medically severe impairment or combination of impairments.  If the person does not have a severe impairment or combination of impairments, the Commissioner denies benefits.  Third, if the person has a severe impairment, the Commissioner determines whether the impairment meets or equals one of a number of "listed impairments."  If the impairment meets or equals a "listed impairment," the Commissioner conclusively presumes that the person is disabled.  Fourth, if the impairment does not meet or equal the "listed impairments," the Commissioner determines whether the impairment prevents the person from performing past relevant work.  If the person can perform past relevant work, the Commissioner denies benefits.  Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work.  The person is entitled to disability benefits only if he or she is unable to perform other work. See 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed 119 (1987).

\\\
\\\

**FINDINGS OF THE ALJ**

The plaintiff was born May 16, 1953. [AR 32.] The plaintiff has a sixth grade education in Honduras [AR 13, 48], and her past relevant work experience includes work as a housekeeper [AR 13, 43]. The plaintiff alleges that she has been unable to work since April 1, 2002, because of disc disease and high blood pressure. [AR 42.]

The ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. The ALJ found that the plaintiff had osteoarthritis of the lumbar spine, cervical disc disease, and hypertension, which were "severe" as defined in the regulations. However, the ALJ found that the plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4. The ALJ found that the plaintiff's allegations regarding her limitations were not entirely credible and that the plaintiff retained the residual functional capacity to perform a wide range of light work that did not involve frequent bending. More specifically, the ALJ found that the plaintiff could stand and/or walk six hours and sit six hours in an eight-hour workday, and that she could lift and/or carry and push/pull ten pounds frequently and twenty pounds occasionally. [AR 19.] The ALJ found that the plaintiff was unable to perform any of her past relevant work but that considering her age, that of an "'individual closely approaching advanced age,'"[1] and her residual functional capacity, notwithstanding her marginal education[2] and lack

---

[1] An individual between age fifty and fifty-four is considered a person "closely approaching advanced age." 20 C.F.R. §§ 404.1563(d) and 416.963(d).

[2] The Commissioner generally considers "formal schooling at a 6th grade level or less [to be] a marginal education." 20 C.F.R. §§

of transferable skills, using Medical-Vocational Rules 202.10 and 202.11 or 202.12 as a framework for decision-making, there were jobs existing in significant numbers in the national economy which the plaintiff could perform. [AR 18-19.]  Accordingly, the ALJ concluded that the plaintiff was not under a disability as defined in the Act at any time through the date of the decision. [AR 19.]

### THE PLAINTIFF'S CONTENTIONS

The plaintiff contends that the ALJ failed fully and fairly to develop the record and that the ALJ failed properly to consider whether the plaintiff's impairment met or equaled a "listing."

### DISCUSSION

**Listings**

The plaintiff contends that the ALJ failed properly to consider her obesity in evaluating whether the plaintiff's condition met or equaled a listing, citing 20 C.F.R., Part 404, Subpart P, Appendix 1, Social Security Ruling 02-01p, and Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003) for the proposition that the presence of obesity must be considered in determining whether the plaintiff's impairment meets or equals a listing.

The plaintiff, whose "highest recorded weight" was two hundred pounds, argues that she is obese because at five feet two inches tall, her body mass index ("BMI") is 36.6, and she would be considered obese by the Commissioner's own ruling, SSR 02-01p. [Joint Stipulation at 14.]

The plaintiff is mistaken.  First, even assuming that this weight represents the plaintiff's "weight over time," SSR 02-01p specifically

---

404.1564(b)(2) and 416.964(b)(2).

recognizes "that although there is often a significant correlation between BMI and excess body fat, this is not always the case." "Thus, it is possible for someone whose BMI is below 30 to have obesity if too large a percentage of the weight is from fat. Likewise, someone with a BMI above 30 may not have obesity if a large percentage of the weight is from muscle." In the plaintiff's case, clearly, she is overweight. However, even the one physician who suggested weight loss did not diagnose obesity. [AR 75, 83.]

Second, even if the plaintiff might have been "obese," notwithstanding the lack of diagnosis or any observations of obesity, this does not mean that the plaintiff's impairments met or equaled the criteria of any impairment listed in 20 C.F.R. Part 404, Appendix 1, Subpart P.

In order to meet a listed impairment, the plaintiff must show that her impairment "manifests the specific findings described in the set of medical criteria for that listed impairment." Marcia v. Sullivan, 900 F.2d 172, 175 (9th Cir. 1990). Contrary to the plaintiff's repeated assertions that she had identified the relevant listings which she purportedly met or equaled [Joint Stipulation at 16, 17, 21], the plaintiff did not do so. Merely stating that her impairment falls under "Listing § 1.00 (Musculoskeletal System)" [Joint Stipulation at 21], is not sufficient, inasmuch as § 1.00 is not a listing. It is the introductory paragraph to the musculoskeletal listings. The category of listed impairments, of which there are seven, begins with § 1.02 for major dysfunction of a joint. The plaintiff does not indicate which of the seven musculoskeletal listings she believes she meets, much less identify
\\\

"the specific findings described in the set of medical criteria for that listed impairment."

For the same reason, the plaintiff fails to establish that her impairment medically equals a listed impairment. In order to demonstrate that the plaintiff's condition medically equaled the criteria of a listed impairment, the plaintiff must show either that there are medical findings which are at least equal in severity to those missing from a listed impairment or she must present evidence "that the combination of impairments established medical equivalence." Marcia, 900 F.2d at 176. Because the plaintiff fails to identify which listing she believes her impairment equals, she likewise fails to identify the medical findings which would be required to meet the listing, or what medical finding is missing for which her obesity is of equal severity.

The plaintiff's argument that the ALJ failed properly to consider her impairments in combination in assessing listing level severity likewise fails. The plaintiff, contrary to her assertions, has "offered no theory, plausible or otherwise, as to how [her impairments] combined to equal a listed impairment." Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001). Rather, the plaintiff concludes that because one of her physicians advised weight loss that there is evidence that the plaintiff's obesity combined to "demonstrate a worsening of Ms. Dolmo's other severe impairments." [Joint Stipulation at 22.] The plaintiff cites 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00(Q)[3] and SSR 02-01p for the proposition that "'the combined effects of obesity with musculoskeletal impairments can be greater

---

[3]The plaintiff implies that § 1.00(Q) is a listing. {Joint Stipulation at 22.] It is not. (Supra.)

than the effects of each of the impairments considered separately,'" and she asks that this court find that because the combined effects "can" be greater, that it "is" greater. However, SSR 02-01p specifically provides that the Commissioner "will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The Commissioner] will evaluate each case based on the information in the case record." The mere fact that the plaintiff was advised to lose weight does not establish that she has any limitation in function due to her obesity. As the Court noted in Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005):

> There was no evidence before the ALJ, and none in the record, which states that claimant's obesity limits her functioning. Neither treatment notes nor any diagnoses addressed claimant's limitations due to obesity. The medical record is silent as to whether and how claimant's obesity might have exacerbated her condition. Moreover, claimant did not present any testimony or other evidence at her hearing that her obesity impaired her ability to work. . . . Even on appeal, Burch has not pointed to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis. In fact, the only evidence in the record relating to her obesity are notes from doctors who observed weight gain, indicated that Burch is obese, and recommended that she participate in a medically supervised weight loss program. We therefore conclude that the ALJ did not commit reversible error by failing to consider Burch's obesity in

determining whether she met or equaled the requirements of a listed impairment.

The plaintiff's case is similar to the factual situation in Burch. Unlike Burch, the plaintiff's physician did not indicate that the plaintiff was "obese" although he advised the plaintiff to lose weight. Unlike Burch, there is no evidence that the plaintiff even required "a medically supervised weight loss program."[4] If anything, there is less evidence in the present case than in the Burch case that the plaintiff is disabled because of obesity.

There was, therefore, no error on the part of the ALJ in failing to consider the plaintiff's weight in assessing listing-level severity.

\\\

---

[4] The plaintiff relies upon "Celaya as clarified by Burch." [Joint Stipulation at 17.] In Celaya, the court found that the interactive effects of Celaya's obesity should have been considered with Celaya's other significant impairments even where Celaya had not explicitly raised the issue of her obesity as a disabling impairment. The Celaya court found that because obesity was implicitly raised in Celaya's report of symptoms; because it was clear from the record that Celaya's obesity was close to the listing level criteria then in effect; and because the ALJ should have been alerted to the need for further development in light of the plaintiff's pro se status, the ALJ's observations of Celaya, and the evidence in the record, the ALJ should have included obesity in the multiple impairment analysis. Celaya, 332 F.3d at 1182. The Burch court distinguished Burch's situation from that of Celaya, noting that the factors which triggered the ALJ's obligation to further develop the issue of obesity were not present in Burch's case. In the plaintiff's case, although the plaintiff did not have representation at the hearing, there is nothing in the record indicating that the plaintiff was observably so obese as to alert the ALJ that further development was needed. The plaintiff's height and weight, unlike Celaya's, was approximately forty pounds less than the requirements of the old listing for obesity. Listing 9.09, Appendix 1, Subpart P, 20 C.F.R. Part 404 (1999). Otherwise, except for one isolated recommendation to lose weight, there is nothing in the evidence of record to alert the ALJ that the plaintiff's obesity required further investigation. Stated another way, despite Celaya, every overweight person is not disabled under the Social Security Act.

- 9 -

**The ALJ's failure fully and fairly to develop the record**

In a Social Security case, the ALJ has an independent duty fully and fairly to develop the record. Although this duty exists even where the plaintiff is represented, where the plaintiff is unrepresented, "the ALJ must be especially diligent in exploring for all the relevant facts." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Id., quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996).

The ALJ noted that the most recent medical evidence in the record was dated October, 2002, a year before the hearing date. [AR 126.] These records were from Martin Luther King/Drew Medical Center. [AR 73-89, 102-06.] The plaintiff testified that she did not return to King/Drew after October, 2002, but that she continued to go to Hubert Humphrey Medical Center until July, 2003. The plaintiff had been receiving treatment there since 1998. [AR 130-31.] It was a physician from Hubert Humphrey, Dr. Mishal, who certified the plaintiff for State Disability. [AR 131; see AR 109, 132.]

The ALJ indicated that he would "request medical records from April of 2002 through July of 2003 from Hubert Humphrey Medical Center medical records." [AR 133, 144.] The ALJ also suggested that he "would be especially interested in what [Dr. Mishal] would have to say. . . . [i]f she's a specialist." [AR 144.]

The plaintiff notes that there are still no records from Hubert Humphrey Medical Center and that there is no evidence that the ALJ even attempted to obtain those records. The plaintiff contends that

- 10 -

1 the apparent failure of the ALJ to request these records after his
2 assurances that he would do so constitutes an abdication by the ALJ of
3 his duty fully to develop the record and is reversible error.  The
4 Commissioner, on the other hand, argues that because there was no
5 prejudice to the plaintiff, the plaintiff's claims that the record was
6 not adequately developed should be denied. [Joint Stipulation at 9.]
7 Cruz v. Schweiker, 645 F.2d 812, 813-14 (9th Cir. 1981); Cox v.
8 Califano, 587 F.2d 988, 991 (9th Cir. 1978).
9     As support for her contention that there was no prejudice to the
10 plaintiff, the Commissioner argues that:
11     1)   The Commissioner had in fact, attempted to obtain the
12          treatment records from Hubert Humphrey;
13     2)   The only record from Hubert Humphrey, the disability form
14          signed by Dr. Mishal, indicates only that the plaintiff was
15          unable to perform her past job, a conclusion shared by the
16          ALJ;
17     3)   The plaintiff last treated in July, 2003, and the plaintiff
18          testified that she only saw Dr. Mishal on only one occasion.
19     Additionally, the Commissioner notes that although the plaintiff
20 had only a "marginal" education, she was attending school to become a
21 medical assistant.  The Commissioner further notes that the plaintiff
22 was represented at the Appeals Council level and that the plaintiff
23 did not submit any treatment notes from Hubert Humphrey to the Appeals
24 Council, nor had she submitted this evidence to this court although
25 the plaintiff submitted other evidence post hearing. [Joint
26 Stipulation at 9.]
27     The Commissioner's arguments are not persuasive.  The fact that
28 the plaintiff's educational level may not be accurately reflected by

1  her sixth grade education is irrelevant to this issue.  It does not
2  relieve the ALJ of his responsibility to develop the record.  Although
3  this court questions why the plaintiff, now represented, and
4  represented at the Appeals Council level, does not, even now, submit
5  the evidence which she believes is so crucial, despite the fact that
6  the plaintiff submitted other post-hearing evidence, any assumption
7  that the failure to obtain the Hubert Humphrey records is not
8  prejudicial would be speculative.  No inquiry was made at the hearing
9  concerning the nature of the plaintiff's treatment at Hubert Humphrey,
10 the frequency of the plaintiff's visits to Hubert Humphrey prior to
11 July, 2003, or whether the plaintiff was placed on certain
12 restrictions by her physicians at Hubert Humphrey.

13       Likewise, to determine that there was no prejudice because the
14 plaintiff only saw Dr. Mishal on one occasion and because Dr. Mishal
15 only found the plaintiff precluded from her past relevant work would
16 also be speculative.  Although Dr. Mishal may have seen the plaintiff
17 on only one occasion, it is clear that the plaintiff received
18 treatment on various occasions at Hubert Humphrey from Nurse
19 Practitioner Jacobs [AR 47, 109, 132], who was working with Dr. Mishal
20 [AR 109, 132.] See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir.
21 1996); see also Benton v. Barnhart, 331 F.3d 1030, 1036-40 (9th Cir.
22 2003).  Although Dr. Mishal had, in fact, stated that the plaintiff
23 was precluded only from her past work and that the anticipated release
24 date to the plaintiff's regular employment was December, 2002, this
25 leads to no inferences concerning the plaintiff's residual functional
26 capacity or the step five evaluation of whether the plaintiff was
27 capable of other work.  Dr. Mishal was only asked whether the
28 plaintiff was incapable of performing her regular and customary work.

Dr. Mishal was not asked whether the plaintiff was precluded from all work nor was she asked to assess the plaintiff's functional limitations. [AR 109.] Moreover, although in June, 2002, Dr. Mishal anticipated a return to regular employment in December, 2002, the assessment was apparently overly optimistic, inasmuch as the plaintiff testified that Dr. Mishal continued to certify the plaintiff for State Disability until May, 2003. [AR 129.]

The Commissioner's suggestion that the ALJ was relieved of his responsibility to develop the record any further because the Commissioner had, in fact, previously requested these records is similarly unpersuasive. The Commissioner last requested the Hubert Humphrey Medical Center records in March, 2003, shortly after the plaintiff filed her applications. [AR 100-01.] Despite the Commissioner's requests, there was no response. Based upon the treatment record in the file at that time, the State agency had scheduled a consultative examination to "[o]btain evidence of current severity." [AR 100.] Although the appointment was later cancelled, this suggests that there was some doubt concerning the adequacy of the record. This doubt was similarly expressed by the ALJ.

Thus, the ALJ's own acknowledgment of the inadequacy of the record triggered his obligation to make the appropriate inquiry. Tonapetyan, 242 F.3d at 1150. Any conclusion that the ALJ's failure to investigate further was not prejudicial is not supported by the evidence and is speculative. Accordingly, the matter requires remand for further proceedings. However, inasmuch as the Hubert Humphrey clinic failed to respond to two previous requests for records, this court recognizes that yet another request may be equally unproductive. In such a case, 20 C.F.R. §§ 404.1512(f) and 416.912(f) provide that

where the record is inadequate, but the necessary information is not readily available from the treating source, the Commissioner may request the plaintiff to undergo a consultative examination.

Upon remand, the ALJ should:

1) Attempt to obtain the records of Hubert Humphrey Medical Center and document his efforts;
2) Obtain updated medical information[5];
3) Refer the plaintiff to a consultative examiner if the ALJ deems it necessary.

## ORDER OF REMAND

The Court has reviewed the pleadings, Joint Stipulation of the parties, and the transcript of the record.  In accordance with the foregoing discussion, the magistrate judge finds that good cause has been shown for remanding the case to the Commissioner.

IT IS ORDERED that this case be remanded to the Commissioner of the Social Security Administration pursuant to sentence four of 42 U.S.C. section 405(g) for further administrative proceedings consistent with the reasons set forth herein.

Dated: January 23, 2006

/s/
JAMES W. McMAHON
United States Magistrate Judge

---

[5] The MRI taken one month following the ALJ decision indicates that the plaintiff was referred for the MRI by Tae Shin, M.D. [AR 121.]